In the Matter of the Construction of the Will of Mac B. Feinson, Deceased.

Surrogate's Court, New York County, December 1, 1950.

*James N. Vaughan* for Helene Feinson, petitioner.

*Samuel L. Greenberg* for Irving B. Feinson, individually and as executor of Mac B. Feinson, deceased, and another, respondents.

FRANKENTHALER, S. The testator died on March 16, 1949, and his will was duly admitted to probate on March 31, 1949. The second paragraph of the will disposed of the stock of a corporation of which the testator was the sole owner. Half the shares were set up in trust for the life use of the widow, with remainder to the brothers and sisters of the testator. The remaining shares were given outright to the brothers and sisters except for ten shares bequeathed to employees. All of the outright gifts were subject to the condition that each of the legatees "shall agree to vote for and elect" the widow as a director of the corporation and that "they shall further agree that they will instruct and direct" the corporation to employ the widow as an executive at a stated salary. The agreement was to be executed "within such reasonable time as may be fixed therefor" by the executor. The executor was authorized to take from the legatees "such agreements as, in his judgment, shall be necessary to carry out effectually the terms and provisions of the bequests, the form thereof to be exclusively determined" by the executor.

The executor entertained some doubts as to the validity of the conditions, and he petitioned this court for a construction of the will, a determination of the validity and effectiveness of the conditions and instructions as to the effectiveness of directions given to the testamentary trustee respecting voting the shares of stock. The court held that the agreements required by the will were valid to the extent that it would direct the executor to carry out the terms of the will (see *Matter of Feinson,* 196 Misc. 590). The court also held that the legacies were subject to a condition precedent.

The citations in the construction proceeding were returnable on May 3, 1949. Three days later, on May 6, 1949, one of the specific legatees died. He was a brother of the testator and of the executor. Prior to the legatee's death the executor had not decided upon a definitive course of action respecting the agreements. Indeed he was then preparing to submit the matter to the court for judicial instructions. A few days after the petition in the construction proceeding was filed, the executor and another brother visited the now deceased legatee for the purpose of obtaining from him a waiver of citation. The terms and conditions of the will were discussed by them. The executor told the legatee that they could not draw an agreement at that time, as far as the stock was concerned, but on the basis of the terms of the will he gave the legatee the substance of the requisite agreement. The executor said to his brother: "Everybody

in the family is perfectly willing to sign it, but we can't draw up the agreement at this time. Is it all right as far as you are concerned? Will you go along with it? The legatee replied: "Anything you people want me to do, or what the family does * * * I am agreeable."

Shortly after the decision was rendered by the court, the executor requested the execution of a written agreement by the legatees in accordance with the court's instructions. That agreement was executed by the executrix of the deceased legatee and the shares of stock were delivered by the executor to the estate of the legatee.

The widow of the testator challenges the acceptance of the agreement and the payment of the legacy. She contends that the legatee did not comply with the conditions precedent during his lifetime, that the legacy never became effective and is revoked by the terms of the will and that, therefore, the shares of stock pass either under the residuary clause of the will (one half to the widow and one half to the brothers and sisters) or as intestate property.

The court holds that there was compliance with the conditions imposed by the will and that the estate of the deceased legatee is entitled to the shares of stock.

It is often stated as a general rule of law that a condition precedent to vesting of a legacy must be strictly performed. In other cases a substantial performance is all that is required. It seems generally that the apparently different results are dictated largely by the intention and purpose of the particular testator as revealed in his will. (Williams on Executors and Administrators [10th ed.], p. 1013; 3 Page on Wills, § 1288; 1 Roper on Legacies [2d Amer. ed.], p. 766.) Professor Page states the rule thus: "Whether substantial performance, as distinguished from literal performance, is sufficient, is a question upon which there is a conflict of authority, which can be reconciled, in part, by determining in each case from the will what degree of performance testator intended to exact" (3 Page on Wills, § 1288, p. 768).

Here the legatee complied with the condition as far as the executor would permit him to do so. The executor had the power to fix the time for the making of the agreement and to determine the form and contents of the agreement. He orally requested an assent to the terms of the will and was satisfied with a verbal agreement in general terms. In his answer in this proceeding the executor alleges that this oral assent constituted an acceptance of the conditions.

It is true that the conversation between the executor and the legatee indicates an understanding that, limited only by the judicial directions in the construction proceeding, the agreement was later to be integrated in a writing. Whether that one transaction, without anything more, would result in an enforceable contract (cf. Restatement, Contracts, §§ 25, 26, and 1 Williston on Contracts [Rev. ed.], §§ 26, 27, 28, 28A) is not decisive of the issue here because the single transaction is not the sole basis of substantial performance of the conditions. Both the executor and the legatee appeared to regard the legatee's act as an assent to the conditions so far as legal, and the personal representative of the legatee affirmed his act by executing the formal contract. In the opinion of the court, the performance of the conditions was not so personal to the legatee that it could not be completed by his personal representative.

The main purpose of the testator in imposing the conditions was to make additional provision for his widow. It was his intent not only to bind the legatees but to subject *all* of the stock to the burden of the conditions. The will expressly states that each of the certificates issued to the legatees shall bear the words: " this certificate is subject to the terms and conditions set forth in paragraph ' Second ' of the Last Will and Testament of Mac B. Feinson." The testator probably realized that any of the legatees would have power to dispose of the stock immediately and doubtless he desired to give notice to any transferees of the conditions under which the stock was held. How effectively he could bind the transferees to the conditions is a question not now necessary to discuss. There can be no doubt that he could effectively bind his own legatees. His purpose cannot be fully effectuated if the stock passes, free of any conditions, to his residuary legatees or to his distributees. His purpose can be realized only if all the stock is taken by his legatees subject to the burden of the conditions.

There is sound authority for the executor's acceptance of the agreement executed by the executrix of the deceased legatee. A case particularly in point is *Matter of Goodwin* ([1924], 2 Ch. 26). There the testator bequeathed to his trustees an annuity of £500, payable quarterly to his wife during her life. The will declared " that the said annuity is intended to be in lieu of and in substitution for the annuity of 70 *l.* per annum which I have covenanted by deed to pay to my said wife and that the bequest thereof herein contained and the trusts thereof hereby declared shall become and be absolutely void and of no effect (except as regards any money actually paid to my said wife on account

of the said annuity) unless my wife shall within six calendar months after my death absolutely release and discharge my estate and effects and my Trustees from payment of the said annuity of 70 *l.* per annum so covenanted to be paid by me to my said wife as aforesaid as from the date of my death to the satisfaction in all things of my Trustees.'' The will contained a residuary gift but no express gift over of the annuity on failure of the widow to comply with the condition. The widow died almost fifteen years after the testator. The testator had been so in debt to persons holding mortgages on his estate that his representatives found it impossible for many years to make any payments to beneficiaries under the will. The widow never received any payments in respect either of the annuity of £70 or the testamentary annuity of £500. She never did anything during her lifetime to comply with the condition imposed by the will. Her executors were made parties to the proceeding to determine their right to the £500 annuity for the period between the testator's death and her own. ROMER, J., said (pp. 31–32): '' It has however been argued by Mr. Eardley-Wilmot that,  *  *  *  inasmuch as she is dead, the performance of the condition was one so personal to her that it cannot be done by her legal personal representative. In the case of a gift made by a will of a legacy of 1000 *l.* upon the condition that the legatees should within a specified time release the testator's estate from a debt, if a release after the time specified would be a substantial compliance with the condition and the time was not of the essence, it appears to me that it would be immaterial whether the release were made by the legatee or his legal personal representative. I do not think that this was disputed by Mr. Eardley-Wilmot. He argued, however, that the condition here is a condition personal to the annuitant, because the benefit taken by her under the will is one that ceases with her life and the annuity under the deed of covenant is one that also ceases with her life. That, in my opinion, does not make the condition a condition personal to the annuitant any more than the condition was personal to the legatee in the case mentioned above. In what respect the claim of the executors of the annuitant in respect of the arrears of the two annuities of 500 *l.* and 70 *l.* differs from the claim of the executors of the legatee to the legacy and the debt, I cannot myself understand. It does not appear to me that this condition was a condition in any sense personal to the annuitant. If in any case the condition be really personal to the legatee it cannot of course be complied with by

the legatee's executors. Such a condition as a condition to take and use a name, or to marry, or to occupy a house, or any condition of that sort, is no doubt personal to the legatee. This one is not; and inasmuch as a release at the present time of the 70 l. annuity will put all the parties in the position which the testator intended that they should occupy and will place them in the same position as though a release had been executed by the lady within six months of the testator's death, I hold that a release by her executors will be a sufficient compliance with the condition.''

The same principle was applied in *Matter of Sage* ([1946] Ch. 332). By a settlement dated October 26, 1926, the settlor transferred certain stocks to his trustees with directions to pay the income to his daughter from and after the date of the execution and delivery by her of transfers to the settlor of certain shares which were then in their joint names. After her death and during the period prior to the execution of the transfers, the trustees were to hold the funds on other trusts. The settlor died in 1942 and up to that time the daughter had not executed the transfers. Thereafter the daughter desired to transfer the shares to the settlor's executors and the latter asked the court to determine whether such a transfer would constitute a transfer within the meaning of the settlement. Although the facts are somewhat differing in that case from the facts in the *Goodwin* case (*supra*) and in the pending one, the court used the *Goodwin* decision as furnishing the key for solution of the problem. The fundamental question was '' whether the act of transfer was intended to be something personal to the transferee, or whether a transfer to the settlor's executors will put the parties in the position which the settlor intended them to occupy.'' For reasons stated at length in the decision, the court held (p. 336) that the transfer to the executors '' would place all parties beneficially interested in the position which the settlor intended them to occupy and would be a sufficient compliance.''

In the pending case, we have not only the formal execution of the agreement by the executrix of the deceased legatee, but assent to the conditions by the legatee during his lifetime and his willingness to go as far toward compliance as the executor of this estate would then permit him to go. The court is satisfied that what has been done constitutes substantial compliance with the terms of the will and that such compliance effectuates the intent and purposes of the testator. The legacy did not lapse but was properly paid to the estate of the deceased legatee.

Submit decree on notice construing the will accordingly.